UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | | |
|---|---|---|
| Bellridge Capital, L.P., | : | |
| | : | |
| Plaintiff, | : | Case No.  20-cv-7485 |
| | : | |
| -against- | : | **COMPLAINT** |
| | : | |
| Transportation and Logistics Systems, Inc., | : | |
| John Mercadante, and Douglas Cerny, | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------------x

Bellridge Capital, L.P. ("Bellridge") by its attorneys, Sullivan & Worcester LLP, for its

Complaint against Transportation and Logistics Systems, Inc. ("TLSS"), John Mercadante

("Mercadante"), and Douglas Cerny ("Cerny") (collectively, the "Defendants"), avers as follows:

## NATURE OF THE ACTION

1.    As explained below, Defendants' actions amount to violations of the Securities and

Exchange Act of 1934 (the "Exchange Act"), breach of contract, and fraudulent inducement.

2.    Bellridge seeks damages and other relief for the defendants' acts and omissions in

connections with two series of transactions.

3.    First, TLSS breached its obligation pursuant to the Preferred Stock Terms, as

defined herein, of the preferred shares Bellridge acquired through the Assignment Agreement, as

defined herein, to convert preferred shares of TLSS to common stock.

4.    Second, TLSS has failed to make payments required under two promissory notes

which Bellridge acquired from TLSS.

5.    Third, TLSS, on multiple occasions, by material misrepresentations and omission,

fraudulently inducing Bellridge to refrain from converting its shares when it was aware the value

of TLSS would plummet, and then, ironically, by taking advantage of the chaos surrounding the

COVID-19 pandemic and inducing Bellridge to convert its debt by promising the shares would not be diluted when it knew full well the shares would be diluted by subsequent investor conversions.

6.     This is an action: (i) for damages under section 10(b) of the Exchange Act, Rule 10b-5 thereunder, and section 20(a) of the Exchange Act based on fraudulent and material misrepresentations and omissions of TLSS and Mercadante which misrepresentations proximately caused Bellridge to convert preferred stock for common stock before its precipitous devaluation in direct reliance upon these misstatements; (ii) for damages under section 10(b) Exchange Act, Rule 10b-5 thereunder, and section 20(a) of the Exchange Act based on fraudulent and material misrepresentations and omissions of TLSS, Mercadante, and Cerny which caused Bellridge to refrain from exercising rights to convert TLSS debt securities into TLSS common stock and to thereafter sell that common stock before it its precipitous devaluation; (iii) for specific performance requiring TLSS to honor stock conversion notices served by Bellridge; (v) for damages based on the breach of several promissory note agreements and related transactional documents and (vi) for declaratory judgment declaring an agreement null and void based on TLSS's failure to meet a condition precedent to the contract taking effect.

**THE PARTIES**

7.     Bellridge is a Delaware limited partnership.  Bellridge is a private company that invests in securities and related instruments.  The members of Bellridge are all domiciled in Florida or Canada.

8.     TLSS is a Nevada corporation with its principal place of business at 2833 Exchange Court, Suite A, West Palm Beach, Florida 33409.  TLSS is a public company engaged in the

business of logistics and transportation whose shares are traded on the OTC Markets under the ticker symbol "TLSS."

9.      Upon information and belief, Mercadante is and at all relevant times was the CEO of TLSS and is a member of its Board of Directors.  Upon information and belief, he is domiciled in Florida.

10.      Upon information and belief, Cerny is and at all relevant times was the Vice President of TLSS and a member of its Board of Directors.  Upon information and belief, he is domiciled in Florida.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1367 because certain of the claims allege violations of section 10(b) of the Exchange Act, Rule 10b-5 thereunder, and section 20(a) of the Exchange Act, and because other claims are so related to the federal securities law claims that they form part of the same case or controversy.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the parties have designated this District as the venue for adjudication of their disputes pursuant to the terms of the June 2018 Note, December 2018 Note, and Exchange Agreement (each defined below at paragraphs 24, 29, and 36 respectively).

13.      TLSS has consented to personal jurisdiction pursuant to the terms of the June 2018 Note, December 2018 Note, and Exchange Agreement (all defined below).

14.      Mercadante and Cerny, as officers and directors of TLSS, consented to personal jurisdiction in New York pursuant to the terms of the June 2018 Note and December 2018 Note.

## FACTUAL BACKGROUND

### I.    Breach of the Convertible Share Assignment Agreement

15.     On or around July 20, 2018, pursuant to a Partial Assignment Agreement (the "Assignment Agreement"), Bellridge purchased 50,000 Convertible Preferred Shares (the "Assignment Shares") of TLSS.  TLSS, then named PetroTerra Corp., approved of the transfer and was a signatory to the Assignment Agreement.

16.     On or about May 5, 2020, Bellridge attempted to convert 31,500 of the Assignment Shares plus applicable dividends to 7,464,376 TLSS common stock at a price of $0.01286 per share.  At that time, TLSS shares traded between the range of $0.0277 and $0.0355.

17.     Pursuant to Section 6(c)(i) of the Preferred Stock Terms, upon issuance of a conversion notice, TLSS was required to issue common stock within "three (3) Trading Days." TLSS breached this obligation and have to date failed to issue all common shares.

18.     Pursuant to Section 6(c)(iii), should TLSS fail to issue the common stock within three Trading Days after receiving the conversion notice, TLSS shall be liable for liquidated damages in the amount of, "for each $5,000 of Stated Value of Preferred Stock being converted, $50 per Trading Day (increasing to $100 per Trading Day on the third Trading Day and increasing to $200 per Trading Day on the sixth Trading Day after such damages being to accrued) for each Trading Day after such second Trading Day after the Share Delivery Date until" the shares are issued or the conversion notice is rescinded."

19.     On July 20, 2020, Bellridge issued a conversion notice for all of the Assignment Shares, including the Assignment Shares that were subject to the May 5, 2020 notice, which TLSS had ignored.

20.     On July 21, 2020, TLSS issued the common stock to Bellridge.

21.     As a result of the delay in issuing the common stock pursuant to the May 5, 2020 demand, Bellridge incurred $57,960 in liquidated damages pursuant to the Preferred Stock Terms.

**II.     Fraud and Breaches of the Note Agreements**

**Bellridge Makes Two Loans**

22.     On or about June 18, 2018, Bellridge loaned $2,497,502 to TLSS pursuant to a Senior Secured Convertible Note (the "June 2018 Note") with a stated maturity date of June 18, 2019.  The June 2018 Note bore interest at the rate of 10% *per annum*.

23.     The June 2018 Note required TLSS to make monthly interest and principal payments to Bellridge.

24.     In connection with the June 2018 Note, Bellridge and TLSS entered into a security agreement (the "Security Agreement") and a warrant agreement (the "Warrant Agreement"), both dated June 18, 2018.

25.     Pursuant to the Security Agreement, TLSS granted Bellridge a security interest in certain specified collateral ("Collateral") to secure TLSS's performance of its payment obligations under the June 2018 Note.

26.     From June 2018 through July 2018, Bellridge filed UCC Statements and perfected its lien in the Collateral.

27.     On or about December 26, 2018, Bellridge loaned TLSS an additional sum, $330,000, pursuant to a second Senior Secured Promissory Note (the "December 2018 Note" and, together with the June 2018 Note, the "Notes").  The December 2018 Note had a stated maturity date of March 15, 2019.  Interest accrued on the December 2018 Note at a rate of 10% *per annum*.

28.     The December 2018 Note required TLSS to make monthly interest and principal payments to Bellridge.

29. TLSS's payment obligations under the December 2018 Note were secured by a perfected lien against all of TLSS's assets and the assets of its subsidiaries, pursuant to the terms of the Security Agreement.

**Mercadante Gets Involved**

30. Upon information and belief, Mercadante joined TLSS as its CEO and Director in or about early 2019.

31. Upon information and belief, Mercadante helped install Cerny, with whom he had previously worked, as a Director and the Vice President of TLSS.

32. Upon information and belief, beginning in or about April 2019, TLSS, then under the control of Mercadante, sought to raise $10 million in equity through a private investment in public equity ("PIPE") transaction.

33. Ostensibly to make TLSS's capital structure acceptable for the contemplated PIPE transaction, Mercadante asked Bellridge to restructure and compromise the June 2018 Note and the related Warrant Agreement. In particular, during a telephone call in or around March 15, 2019, 2019, Mercadante represented to Bellridge that this restructuring and compromise were essential to the contemplated PIPE transaction.

34. As a result of the representations, on or around April 9, 2019, Bellridge agreed to reduce the principal of the June 2018 Promissory Note from $2,497,502 to $1,800,000, agreed to reduce the interest rate thereon from ten percent to five percent *per annum*, and agreed to extend the maturity date from June 18, 2019 to August 31, 2020. These revised terms were incorporated into an exchange agreement, dated April 13, 2019 (the "Exchange Agreement"). Hereafter, "Exchange Agreement" shall refer collectively to the June 2018 Note and the Exchange Agreement, which modified certain of the terms of the June 2018 Note.

35.     Bellridge was also supposed to receive 1,160,000 shares of common stock pursuant to the Exchange Agreement (the "Exchange Shares").

36.     On or around April 9, 2019, TLSS delivered to Bellridge 492,500 shares of common stock.  However, it never delivered the remaining 667,500 shares owed pursuant to the Exchange Agreement.

37.     The Exchange Agreement required TLSS to make monthly interest and principal payments to Bellridge.

38.     TLSS materially and continually breached the terms of the Exchange Agreement when, over the next fourteen months, it missed seven scheduled payments to Bellridge and failed to deliver all of the common stock to Bellridge.

**TLSS Incurs Significant Debt, Bellridge Again Offers Assistance, and TLSS Again Breaches**

39.     Upon information and belief, in or about June 2019, just three months after executing the Exchange Agreement, TLSS, through its investment bankers, terminated the PIPE transaction.

40.     Upon information and belief, between in or about April 2019 and in or about August 2019, TLSS borrowed over $2 million from merchant cash advance lenders (the "MCAs").

41.     In or about August 2019, Mercadante and Cerny each and jointly represented to Bellridge during multiple telephone calls that (a) the only way to improve shareholder value was to raise new capital sufficient to satisfy TLSS's obligations to the MCAs and (b) in order to raise new capital, Bellridge would be required to subordinate its debt.

42.     On or about August 29, 2019, in reliance on these representations, Bellridge provided its signature on a Subordination Agreement (the "Draft Subordination Agreement") to

hold in escrow, with the effectiveness or release of its signature on the Draft Subordination Agreement *expressly subject* to certain conditions precedent.

43.     The Draft Subordination Agreement provided, among other things:

a.  Bellridge would subordinate its debt owed under the June 2018 and December 2018 Notes.

b.  That debt, as subordinated, would accrue interest 5% *per annum*.

c.  The principal of the debt would increase from approximately $2,100,000 to $2,400,000.

d.  TLSS would (i) immediately pay Bellridge $200,000 to be applied against the restated principal of $2,400,000 and (ii) thereafter on every month "commencing no later than October 15, 2019" pay $150,000 until the restated debt was fully repaid.

44.     As a condition precedent to effectiveness of the Draft Subordination Agreement, TLSS was required to execute a confession of judgment for the benefit of Bellridge.

45.     TLSS failed to execute the required confession of judgment.  As a result, the Draft Subordination Agreement did not become effective.

46.     Even without reference to the unfulfilled condition precedent, TLSS materially breached the terms of the Draft Subordination Agreement:  TLSS failed to make any of the payments contemplated by that document.

47.     Section 6(b) of the June 2018 Note provides that upon an Event of Default, as defined therein, all amounts due (the "Mandatory Default Amount") shall become payable, at Bellridge's election, "in cash or in shares of Common Stock."  This term was preserved by the Exchange Agreement.

48.     The June 2018 Note originally provided that the Mandatory Default Amount would be converted to common stock at a price of $0.006 per share.  This term was modified by the Exchange Agreement to provide for conversion at a "mutually agreed upon" price.

49.     As a result of TLSS's default, Bellridge was, and still is, entitled either to: (i) recover the Mandatory Default Amount in cash or (ii) convert the Mandatory Default Amount into shares of TLSS common stock at a "mutually agreed upon" price.

50.     On December 23, 2019, Bellridge sent TLSS a notice of default and acceleration of amounts due under the June 2018 Note as modified by the Exchange Agreement and under December 2018 Note.  TLSS failed to make any payment as set forth in the notice of default.

**TLSS, Mercadante, and Cerny Defraud Bellridge**

51.     Upon information and belief, after entering into the Draft Subordination Agreement (subject to the above described condition precedent), TLSS was able to satisfy its obligations to the MCAs.

52.     Thereafter, the Defendants embarked on a scheme to defraud Bellridge and other investors.

53.      In or about August 2019, contemporaneously to its execution of the Draft Settlement Agreement, Mercadante represented in at least one phone call to investors that by repaying the debt that TLSS owed to the MCAs, he had improved TLSS's financials and that the value of TLSS's equity would increase.

54.     Upon information and belief, however, within 30 to 60 days of repayment of the MCA's, Mercadante returned to the MCAs and borrowed more money without notifying certain of TLSS's secured convertible debt holders, which constituted a knowing and willful violation of Section 7(a) of the June 2018 Note, as amended in the Exchange Agreement, Section 4 of the

December 2018 Note, putting the assets of TLSS at risk. The addition of this debt constituted a material agreement the disclosure of which was required to have been provided in a Form 8-K. TLSS failed to file a Form 8-K disclosing this new material transaction or the consequences thereof.

55.    In or about early November 2019, during a phone call, Mercadante and Cerny claimed that TLSS would raise $800,000 in capital through the issuance of shares.

56.    TLSS instead raised capital through the issuance of convertible debentures, thereby increasing TLSS's debt, not equity. The accumulation of this debt in the aggregate was material and required disclosure pursuant to the federal securities laws on Current Report Form 8-K. TLSS failed to file a Form 8-K disclosing the plan of financing and incursion of additional debt. Instead, in or about March 2020, TLSS issued a press release announcing that TLSS had rid itself of approximately $1,700,000 of debt, while failing to disclose that it had incurred additional debt.

57.    Furthermore, in or about February of 2020, upon information and belief, TLSS defaulted on a convertible debenture. TLSS did not disclose this material event in any 8-K filing, as required. TLSS's failure to disclose this default to Bellridge also violated the terms of the Exchange Agreement and the December 2018 Note. Among other things, this conduct concealed from Bellridge and the other investors, material information about the company which could negatively and materially affect the value of TLSS shares.

58.    In fact, TLSS's acquisition of additional debt became known to Bellridge and the investing public only in May 2020 when TLSS filed its annual report on its Form 10-K. There and then TLSS first publicly disclosed that: (i) the company had concerns about its "ability to raise capital to develop our business and fund our operations;" (ii) "[o]ur substantial indebtedness could adversely affect our business, financial condition and results of operations and our ability to meet

our payment obligations;" and (iii) "[f]rom November 22, 2019 to December 31, 2019, [TLSS] entered into several secured Merchant Loans in the aggregate amount of $2,283,540."

59.     Upon information and belief, in or about June 2020, working with certain shareholders, Mercadante obtained from TLSS a Preferred C voting instrument in exchange for $100.  The Preferred C voting instrument enabled corporate action to be taken without a vote of the shareholders.

60.     The substantial accumulation of debt, disclosures, and Preferred C instrument had a devastating effect of price of TLSS's shares, causing them to drop from a high-point of $8.50 per share in November 2019 to a low of $0.0099 in the spring of 2020.

61.     Once these substantial losses became apparent, Bellridge sought to avoid incurring further losses and attempted to convert the debt into common stock so that it could exit its investment in TLSS.

**Bellridge Demands Conversion and Payment under the Notes**

62.     On April 28, 2020, Bellridge sent a demand letter (the "Demand Letter") to TLSS requesting payment and conversion in full as provided in Exchange Agreement and the December 2018 Note.

63.     On or about April 29, 2020, Bellridge attempted to convert the remaining debt under the Exchange Agreement into common stock at a price of $0.00545.

64.     This was an objectively reasonable price because it was calculated according the default calculation set forth in the Exchange Agreement.

65.     On May 1, 2020, counsel for TLSS informed Bellridge that TLSS would not agree to a conversion price of $0.00545, despite the fact that TLSS had, on a previous occasion, agreed with Bellridge that the methodology used to determine this calculation was reasonable.  TLSS

refused to provide a counteroffer or otherwise attempt its contractual obligation to arrive at "a mutually agreed upon" price.

66.     Over the ensuing months, as the COVID-19 pandemic continued to spread around the world and roil the financial markets, TLSS's stock price dropped even further and Bellridge incurred even greater losses.

67.     On July 23, 2020, in an effort to resolve all of Bellridge's claims related to the unissued Exchange Shares and outstanding debt, Bellridge sent to Mercadante a proposed agreement, including a fixed conversion price of $0.02 per share.

68.     On or around July 27, 2020, TLSS sent a counter-proposal (the "July 27 Proposal") which set the outstanding debt owed Bellridge at $2,100,000, contained a conversion price of $0.02 per share, and included an anti-dilution provision.

69.     On July 31, 2020, Mercadante sent a text to Robert Klimov ("Klimov"), Bellridge's Managing Partner, stating, "Robert after conferring with the board Sebastian and others we are not doing any more toxic debt the deal that was made on the preferred stems back to last August so therefore I want to inform you that the deal we last offered you at .02 is on table Please sign and return thank you John Mercadante." [sic]

70.     On August 4, 2020, Klimov called Mercadante to discuss changes to the July 27 Proposal.  The parties orally agreed (the "Oral Agreement") to set the outstanding debt owed Bellridge at $2,150,000 and that it would be converted at a price of $0.02 per share and to keep all other elements of the July 27 Proposal the same.

71.     Based on Mercadante's assurances in the Oral Agreement and in an effort to speed along the process and avoid further losses than the ones already incurred due to the pandemic and

Defendants' brazen conduct, on August 4, 2020, Klimov signed and returned the July 27 Proposal with the terms of the Oral Agreement implicitly included.

72.     However, that same day, after returning the executed proposal, Bellridge received a new proposal from TLSS which excluded the anti-dilution provision (the "August 4 Proposal"). In subsequent phone calls that day with Sebastian Giordano ("Giordano"), a consultant to TLSS, Giordano told Klimov that TLSS had sent Bellridge the wrong proposal and that if Bellridge did not sign the new proposal excluding the anti-dilution clause, TLSS would not issue shares to Bellridge.

73.     The anti-dilution clause was essential to Bellridge because it could sustain heavy losses if it converted shares at a fixed price of $0.02 and then TLSS diluted the value of shares through additional conversions with other parties before Bellridge could resell the shares on the open market.

74.     That same day, Klimov confirmed with Mercadante via phone that no other preferred shareholders would be converting their shares and thereby diluting the value of Bellridge's shares.  Mercadante confirmed that TLSS would not allow other shareholders to convert and dilute Bellridge's shares.

75.     Mercadante, as an experienced executive in the securities industry, surely knew of the importance to Bellridge of anti-dilution protection.

76.     Satisfied with Mercadante's representations and intending to avoid any further losses than those significant losses caused by the fraud and pandemic, Klimov signed the second agreement as well.

77.     As a result, on July 28, 2020, Bellridge allowed TLSS to convert $620,671.23 of the remaining debt of $2,692,867.19 into shares of common stock at a price $0.02 per share.

78.     However, in the meantime, TLSS, despite Mercadante's representations, allowed other shareholders to convert toxic warrants and preferred shares into common stock at a price of $0.006, which diluted the value of Bellridge's shares, such that Bellridge suffered losses totaling $128,393.64.

79.     To date, of the original debt of $2,175,000 pursuant to the Exchange Agreement, through conversions, has been reduced by $2,150,00 and totals $25,000.

80.     Furthermore, pursuant to Section 4(c) of the June 2018 Note, conversions of debt into common stock shall be honored within "three (3) Trading Days," and a failure to honor a conversion notice will result in liquidated damages of $1,000 per day.   These terms were incorporated into the Exchange Agreement.

81.     Therefore, pursuant to the Exchange Agreement, TLSS owes Bellridge $81,000 in liquidated damages for the delayed conversion of the remaining debt into common stock pursuant to the Exchange Agreement.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST CLAIM FOR RELIEF
**(Violation of Section 10(b) of the Exchange Act and Rule 10b-5)**
**Against TLSS and Mercadante**

82.     Bellridge repeats and re-alleges the allegations of Paragraphs 1 through 81 as if fully set forth herein.

83.     Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading as set forth herein, including, but not limited to, by telling Bellridge that the value of the common stock would not be diluted if it executed the August 4 Proposal even though it was going to allow other shareholders to convert toxic and dilutive warrants and conversions.

84.     Defendants made these material statements and omissions with the intent to deceive Bellridge and lull Bellridge into a false sense of security so that Bellridge would execute the August 4 Proposal and convert its shares at an inflated price.

85.     Defendants knew that the misstatements and omissions were material, as evidenced by, among other things, the fact that Mercadante and Cerny were: (i) high-level officers and/or directors at TLSS; (ii) not only privy to all internal budgets, plans, projections and/or reports, but were required to sign Board resolutions authorizing all budgets, plans, projections, and/or reports; and (iii) aware of TLSS's intent to allow other shareholders to convert their preferred shares and dilute the value of the common stock.

86.     Defendants' scienter and intentional misconduct, or at the very least extraordinary recklessness, is evident from its calculated decision to remove the anti-dilution provision from the July 27 Proposal, while simultaneously assuring Bellridge that no dilution would occur, while allowing other security holders to convert at lower prices despite its assurances, and the harm that skilled and experienced professionals such Mercadante knew would be sure to occur.  Such deliberate misconduct or extraordinary recklessness constitutes scienter.

87.     Defendants' omissions misrepresentations were material because the subsequent conversions diluted the value of Bellridge's shares and had Bellridge known of the omissions and the falsity of Defendants' representations, Bellridge would not have converted its debt at the higher price and insisted on obtaining a conversion price at the default price to which it was entitled.

88.     Bellridge's reliance on Defendants' material misrepresentations and omissions was reasonable because the assurances regarding dilution came from TLSS's CEO who had intimate knowledge of the company's finances and intentions.

89.     Bellridge has been directly and proximately harmed because it ended up converting at an artificially inflated price that limited the return it could receive by selling due to the subsequent dilution and suffered significant losses as a result.

90.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including interstate telephone communications, email, and the facilities of a national securities exchange.

91.     By virtue of the foregoing, Defendants violated section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

92.     Bellridge is entitled to recover damages in an amount to be determined at trial.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
**(Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Related)**
**Against Defendants**

93.     Bellridge repeats and re-alleges the allegations of Paragraphs 1 through 92 as if fully set forth herein.

94.     Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading as set forth herein, including, but not limited to, by telling Bellridge that TLSS intended to raise capital through an equity raise while failing to disclose to Bellridge that Defendants were devaluing TLSS through the accumulation of debt.

95.     Defendants made these material statements and omissions with the intent to deceive Bellridge and lull Bellridge into a false sense of security so that Bellridge would not demand conversion of the Mandatory Default Amount into shares of common stock under the Exchange Agreement and so that Bellridge would convert its shares at an artificially inflated price.

96.     Defendants knew that the material misstatements and omissions were false and misleading, as evidenced by, among other things, the fact that Mercadante and Cerny were (i) high-

16

level officers and/or directors at TLSS; (ii) not only privy to all internal budgets, plans, projections and/or reports, but were required to sign Board resolutions authorizing all budgets, plans, projections, and/or reports; (iii) aware of TLSS's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false, incomplete and misleading; and (iv) required to certify the veracity and accuracy of TLSS's Forms 10-Q and 10-K filings.

97.     Defendants' scienter and deliberate misconduct, or at the very least extraordinary recklessness, is evident from its highly unreasonable decision to withhold information regarding the accumulation of debt, which decision was an extreme departure from the ordinary standards of care.  Such deliberate misconduct or extraordinary recklessness constitutes scienter.

98.     As a holder of contractual rights to purchase TLSS common stock under the Exchange Agreement, Bellridge is a purchaser of securities within the intent of section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

99.     Had Bellridge known of the material omissions and the falsity of Defendants' representations, Bellridge would have exercised its conversion rights sooner in the first place.

100.     Bellridge's reliance on Defendants' material misrepresentations and omissions was reasonable because, among other things, TLSS was required under the securities laws to disclose the material events at issue.  Moreover, the Exchange Agreement required TLSS to comply with its disclosure requirements under the securities laws.

101.     Bellridge has been directly and proximately harmed because it was unable to acquire TLSS common stock at a time when it was significantly more valuable, which, among other things, would have allowed Bellridge to resell the common stock for a greater return and to recover amounts loaned to TLSS via the Exchange Agreement.  As a result, Bellridge has suffered

significant losses as the price of TLSS on the open market has dropped roughly $7.00 per share since November.

102.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including interstate telephone communications, email, and the facilities of a national securities exchange.

103.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

104.    Bellridge is entitled to recover damages in an amount to be determined at trial.

**AS AND FOR A THIRD CLAIM FOR RELIEF**
**(Violation of Section 20(a) of the Exchange Act)**
**Against Mercadante and Cerny**

105.    Bellridge repeats and re-alleges the allegations of Paragraphs 1 through 104 as if fully set forth herein.

106.    Mercadante and Cerny acted as controlling persons of TLSS within the meaning of Section 20(a) of the Exchange Act as alleged herein.

107.    By virtue of their high-level positions, Mercadante and Cerny were aware of, or should have been aware of, TLSS's operations and intimate knowledge of the false financial information filed by TLSS with the SEC and disseminated to the investors, as well as information omitted from disclosure.  Mercadante and Cerny had the power to influence and control, and did, in fact, influence and control, directly or indirectly, the decision-making of TLSS, including, but not limited to, the content and dissemination of the various false and misleading statements.

108.    As set forth above, TLSS, Mercadante and Cerny each violated Section 10(b) and Rule 10b-5 thereunder by their acts and omissions as alleged in this Complaint.  By virtue of their

positions as controlling persons, Mercadante and Cerny are liable pursuant to Section 20(a) of the Exchange Act.

109.    As a direct and proximate result of Mercadante's and Cerny's wrongful conduct, Bellridge suffered damages in an amount to be determined at trial.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (Fraudulent Inducement)
### Against TLSS

110.    Bellridge repeats and re-alleges the allegations of Paragraphs 1 through 109 as if fully set forth herein.

111.    TLSS made misrepresentations of material fact when Mercadante assured Bellridge that other shareholders would not convert their preferred shares and dilute the value of Bellridge's shares.

112.    TLSS's misrepresentations were false and known to be false at the time they were made as, contemporaneous with the representations, it was diluting the value of the common stock with the exchange of toxic warrants and debt for preferred shares at a price of $0.006.

113.    The misrepresentations were made to induce Bellridge's reliance as without such assurances, Bellridge would not have executed the August 4 Proposal.

114.    Bellridge's reliance was justifiable as Klimov had no reason to believe Mercadante was lying.

115.    Bellridge suffered damages in the form of losses of $128,393.64.

116.    As a result of TLSS's fraudulent inducement, Bellridge is entitled to recover an amount to be determined at trial, but in no event less than $128,393.64, which amount is exclusive of the costs of collection, and for the August 4 Proposal to be declared invalid.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### (Breach of Contract — Exchange Agreement)
### Against TLSS

117.    Bellridge repeats and re-alleges the allegations of Paragraphs 1 through 116 as if fully set forth herein.

118.    The Exchange Agreement is a valid and binding contract.

119.    The Draft Subordination Agreement is invalid *ab initio* because TLSS failed to meet a condition precedent when it failed to deliver a signed Confession of Judgment.

120.    Bellridge did not waive this requirement when it signed the Draft Subordination Agreement because TLSS represented that the signed Confession of Judgment would be forthcoming and Bellridge expressly stated that its signature would not be released until and unless it received an executed confession of judgment, a clear condition precedent.

121.    Bellridge performed all of its obligations under the Exchange Agreement when it agreed to reduce the principal balance pursuant to the Exchange Agreement.

122.    TLSS breached the Exchange Agreement when it failed to make all required payments.

123.    TLSS further breached the Exchange Agreement when it failed to disclose that it had defaulted on certain convertible debentures in February 2020.

124.    TLSS further breached the Exchange Agreement when it failed to issue all shares owed Bellridge under the Exchange Agreement.

125.    As a result of TLSS's breach of the Exchange Agreement, Bellridge is entitled to recover an amount to be determined at trial, but in no event less than $582,847.37, which amount is exclusive of the costs of collection and will continue to increase as interest accumulates at a rate

of $190.79 per day, as well as the market value of the 667,500 undelivered shares as of the date of the execution of the Exchange Agreement.

**AS AND FOR A SIXTH CLAIM FOR RELIEF**
**(Specific Performance of the Exchange Agreement)**
**Against TLSS**

126.     Bellridge repeats and re-alleges the allegations of Paragraphs 1 through 125 as if fully set forth herein.

127.     In the alternative to the Sixth Claim for Relief, the Exchange Agreement is a valid and binding contract.

128.     The Draft Subordination Agreement is invalid *ab initio* because TLSS failed to meet a condition precedent when it failed to deliver a signed Confession of Judgment.

129.     Bellridge did not waive this requirement when it signed the Draft Subordination Agreement because TLSS represented that the signed Confession of Judgment would be forthcoming and Bellridge expressly stated that its signature would not be released until and unless it received an executed confession of judgment, a clear condition precedent.

130.     Bellridge performed all of its obligations under the Exchange Agreement when it agreed to reduce the principal balance pursuant to the Exchange Agreement.

131.     Recognizing that TLSS seemingly lacked sufficient cash in order to repay the Mandatory Default Amount under Exchange Agreement, Bellridge submitted conversion notices under the Exchange Agreement at a reasonable price guided by prior dealings and other market participants.

132.     TLSS improperly rejected the conversion notices.

133.     Bellridge requires specific performance compelling TLSS to deliver the shares pursuant to the Exchange Agreement because TLSS apparently has insufficient cash to pay the

Mandatory Default Amount or any judgment in this action, meaning there is no adequate remedy at law and Bellridge will be irreparably harmed absent the requested injunctive relief.

134.    Furthermore, cash relief is inadequate because if TLSS continues to allow others convert and further deflates the share price, it will not have any cash with which to pay a judgment.

135.    The balance of equities favors Bellridge, and the public interest would be served by specific performance because, absent specific performance, Bellridge will be precluded from any recovery and TLSS would effectively be able to escape its contractual obligations to its lender.

136.    Bellridge is entitled to specific performance requiring TLSS to honor the outstanding stock conversions served by Bellridge and at a price of $0.00545.

**AS AND FOR A SEVENTH CLAIM FOR RELIEF**
**(Breach of Contract — December 2018 Note)**
**Against TLSS**

137.    Bellridge repeats and re-alleges the allegations of Paragraphs 1 through 136 as if fully set forth herein.

138.    The December 2018 Note is a valid and binding contract.

139.    The Draft Subordination Agreement is invalid *ab initio* because TLSS failed to meet a condition precedent when it failed to deliver a signed Confession of Judgment.

140.    Bellridge did not waive this requirement when it signed the Draft Subordination Agreement because TLSS represented that the signed Confession of Judgment would be forthcoming and Bellridge expressly stated that its signature would not be released until and unless it received an executed confession of judgment, a clear condition precedent.

141.    Bellridge performed all of its obligations under the December 2018 Note when it made payment in full to TLSS pursuant to the December 2018 Note.

142.     TLSS breached the December 2018 Note when it failed to make all required payments.

143.     TLSS further breached the December 2018 Note when it failed to disclose that it had defaulted on certain convertible debentures in February 2020.

144.     As a direct and proximate result of TLSS's breaches of the December 2018 Note, Bellridge is entitled to recover an amount to be determined at trial, but in no event less than $267,969.68, which amount is exclusive of the costs of collection and will continue to increase as interest accumulates at a rate of $126.70 per day.

**AS AND FOR AN EIGHTH CLAIM FOR RELIEF**
**(Declaratory Judgment – Failure to Meet Condition Precedent of Subordination Agreement)**
**Against TLSS**

145.     Bellridge repeats and re-alleges the allegations of Paragraphs 1 through 144 as if fully set forth herein.

146.     The Subordination Agreement was a valid contract, enforceable according to its terms.

147.     Bellridge performed all of its obligations under the Subordination Agreement by agreeing to subordinate its rights under the Notes.

148.     TLSS failed to meet a condition precedent to the Subordination Agreement becoming effective when it failed to deliver a signed Confession of Judgment.

149.     As a result of Defendant's failure to execute the Confession of Judgment, Bellridge seeks declaratory judgment stating that the Subordination Agreement is null and void.

**AS AND FOR A NINTH CLAIM FOR RELIEF**
**(Breach of Contract—Assignment Agreement)**
**Against TLSS**

150.     Bellridge repeats and re-alleges the allegations of Paragraphs 1 through 149 as if fully set forth herein.

23

151.    The Assignment Agreement is a valid and binding contract, enforceable according to its own terms.

152.    Bellridge has performed all of its obligations under the Assignment Agreement.

153.    TLSS breached the Assignment Agreement when it failed to issue the 31,500 shares Bellridge requested via a conversion notice on May 5, 2020.

154.    As a result of Defendant's breach of the Assignment Agreement, Bellridge is entitled to recover an amount to be determined at trial, but in no event less than the difference between the price at the requested time of conversion and price on the date of the actual conversion, as well as liquidated damages in the amount of $57,960.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bellridge Capital, L.P. demands judgment against Defendants as follows:

(a)    On its First Claim for Relief, money damages against Defendants for violations of section 10(b) of the Exchange Act and Rule 10b-5 thereunder, in an amount to be determined at trial;

(b)    On its Second Claim for Relief, money damages against Defendants for violations of section 10(b) of the Exchange Act and Rule 10b-5 thereunder, in an amount to be determined at trial;

(c)    On its Third Claim for Relief, money damages against Mercadante and Cerny for violations of section 20(a) of the Exchange Act, in an amount to be determined at trial;

(d)    On its Fourth Claim for Relief, money damages against TLSS in an amount to be determined at trial and a declaration that the August 4 Proposal is invalid;

(e)      On its Fifth Claim for Relief, money damages against TLSS in an amount to be determined at trial;

(f)      On its Sixth Claim for Relief, specific performance directing TLSS to honor the stock conversion notices served by Bellridge and convert the amounts due on the Exchange Agreement into TLSS common stock;

(g)      On its Seventh Claim for Relief, money damages against TLSS in an amount to be determined at trial;

(h)      On its Eighth Claim for Relief, declaratory judgment against TLSS;

(i)      On its Ninth Claim for Relief, money damages against TLSS in an amount to be determined at trial;

(j)      Attorneys' fees and costs in bringing this action; and

(k)      Such other relief as this Court may determine as fair and just.

Dated:   New York, New York
         September 11, 2020

**SULLIVAN & WORCESTER LLP**
By: /s/ *David E. Danovitch*
     David E. Danovitch
     Clark A. Freeman
     Jeremy Bachrach Siegfried
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone:  (212) 660-3000
Facsimile:   (212) 660-3001
ddanovitch@sullivanlaw.com
cfreeman@sullivanlaw.com
jsiegfried@sullivanlaw.com

*Attorneys for Plaintiff*
*Bellridge Capital, L.P.*